My name is Robert Powell appearing here on behalf of Mr. Smith. I'm with me at the council table is Lee Gelernt and Gaur Ladeen of the ACLU. Mr. Gelernt and Mr. Ladeen have recently come on as of council. In terms of the argument, we would like to reserve three minutes by way of rebuttal. The time, the 12 minutes that we have, will be divided between myself and Mr. Gelernt, six minutes each. As a preliminary matter, the issue before the court what we're asking the court to review is not whether or not Mr. Smith is admissible or inadmissible. What we're asking the court to review is whether or not the CBP, the Board of Protection, had lawful authority to issue the expedited removal in the first place. Congress has established several different mechanisms for issuing an order of removal. Typically, of course, this goes in front of an immigration judge in removal proceedings in immigration court. There's also a procedure whereby an expedited removal order can be issued by border officers at the border. The question is whether or not CBP had the lawful authority to issue that expedited removal order. If Mr. Smith is correct in his argument, then that CBP did not have the legal authority to do that. Then what the court does under the statute is refer the case to the immigration court. Again, it does not make any determination as to the ultimate question of admissibility or inadmissibility. Much of the dispute in this case involves the interpretation of section 1252E, the provision that provides for judicial review of expedited removal orders, and in particular E2B, the provision that provides for review in habeas proceedings of whether or not the petitioner was ordered, removed under section 1225B1, under the expedited removal proceeding. What does Congress intend the court to be allowed to review under that provision? We submit that at least it has to include review of whether or not the agency had the lawful authority, had the statutory and regulatory authority to issue that removal order. There are when Congress sets up this expedited removal proceedings, it allows CBP officers to issue the order, but there are definitely statutory boundaries on whether CBP can use that process. Does the issue relate to the particular facts of your client, or are you saying there's a question as to whether this kind of order can be issued as to anybody? Well, the question that we're presenting, of course, is whether an expedited removal order can be issued against Canadians who are arriving as visitors, who are entitled, for whom the documentary requirements are waived. Is that true because he was potentially inadmissible under 1182A7, having to do with the working situation? So I'm just trying to understand the integration of these statutes on admissibility because he could be argued to be a visitor, but in fact, when they ask, are you going to work? He said, well, if you call that work, but yes, I am going to work. Yes, right. So if the expedited removal proceeding, if it applies, that is to say, if the CBP officer has the authority to use the expedited removal proceeding, then he makes the determination about inadmissibility or not under Section 212A7, the intending immigrant provision. And if CBP has authority to do that, you know, then that's, I guess, the end of the story, right, because the court does not have any jurisdiction to review that particular determination. But again, what the court does have authority to do is ask whether or not CBP had the statutory and regulatory, the lawful authority to issue that order in the first place. So for, I mean, the statute, for example, makes it clear that CBP does not have statutory authority to issue this order against a Cuban who arrives in the air, a flying Cuban. Presumably, the court would have, if that happened, the court would have jurisdiction under Section 1252E2, would have jurisdiction to say, you know, that order was not issued under the expedited removal statute because there was no statutory authority for CBP to issue that order. You know, CBP can act under the statute, and when it does so, that's no jurisdiction. But when it acts outside of the statutory authority, then the court does have jurisdiction to review that and say, no, this issue was not, this order was not issued under that provision. It, for example, was issued against a flying Cuban for which the agency did not have authority. Or similarly, what we argue. Flying Cuban exception appears within the statute in question. What is it within the statute in question that wouldn't extend the authority to somebody in your client's situation? Well, we think. Had to reach someplace else, don't you? Well, two things. We think that the legislative history underlying the expedited removal provision makes it clear that it should not be applied against Canadians who are visiting. In addition, to the extent that there might be any question about that, the regulations make it clear that the CBP officer does not have authority to apply this against Canadians who are coming in for whom documentary requirements are waived. So, yeah, in answer to your question, I believe there is, you know, the statutory legislative history makes that clear. In addition, we're certainly relying on the regulation. Could you, maybe I'm missing something because I wanted to step back to what I thought was the threshold question before we might get to this question. And that was whether he was in custody. And is that your argument or is that your co-counsel's argument? Co-counsel, I do want to say something about the in-custody issue. I do want to make sure that he has time, though. What field? We're going to give him his time because this is, it seems to me that it's kind of like building blocks here of what we have to get to. And that's where I would start. Okay. On the custody issue, what I do want to say is that for purposes of jurisdiction under section 1252E, it's clear on E2, it's clear, and I think the government agrees with this, that the custody is not an issue. In other words, we do not have to establish in custody in order to bring challenge under 1152E2. The government made that clear in the briefing in front of the district court. And it certainly has not taken a position contrary to that in our briefing here. So. Well, for a habeas petition, he needs to be in custody. So if he's not in custody, let's just say for talking purposes, he doesn't quite meet custody based on the pleadings and the circumstances, then you're saying it doesn't really matter because he certainly can challenge the authority in some way, right? He can bring a case. The court has jurisdiction, whether or not there's custody under section 1152E2. So the custody issue really only, if this court were to say, no, there's no jurisdiction to address this issue under 1252E2, then our argument is, well, there's jurisdiction under the suspension clause. And that's when the government is arguing, if the court has to get to the suspension issue, then the government is arguing that, well, there's no jurisdiction because the person was not in custody. All right. Well, I don't think that's quite their argument. We'll let them make the argument. But if he's not in custody, he can't bring a habeas petition if he's not in custody, okay? Let's just assume that he's not in custody. I think you don't say okay to that. But you're not saying okay to that. Yeah, I mean, section. I'm not saying he can't challenge in some way the removal, you know, the authority issue. There may be other avenues. I'm just trying to get which avenue we're going down for each of the claims. So let's say he has a habeas petition. And you agree that you have to be in custody under the legal definition to bring a habeas petition. Well, so. Yes or no? To bring a habeas petition, do you have to be in custody? Under section 1252E2, the answer is no. Now, if you look at the wording of section 1252, it doesn't say that you have to file a habeas petition. It doesn't say you have to file a petition under section 2251. It just says habeas proceedings will apply. But if there's no requirement there, and again, this is the government's argument below. There's no requirement there that the person be in custody, right? So in other words, a person can bring the claim under section 1252E2 without being in custody. Right. The government seemed to very much argue here there's a custody requirement. You made a couple of references the government doesn't dispute, but I just read a brief that does. Isn't that the case? Here's his point. So you tell me where he's going. Number one, you can't invoke habeas because he's not in custody. Number two, even if he was in custody, he can't come in under 1252E because he doesn't have the permissible basis. So it seems to me like we're, I'm not arguing, but the two sides are talking past each other on this point. Yeah. So if I can try to clarify those issues. Okay. So first, let's look at the first question. Does the court have jurisdiction under 1252E2? I think both sides agree that the person does not have to be in custody to raise that, to bring the lawsuit under 1252E2. The question, the jurisdictional argument, the government's argument is there's no jurisdiction because petitioner's claim is not a claim under section 1225D1. Well, yeah, he says that he doesn't raise any of the permissible basis under 1252E. Correct. Yeah. Now, if the court were to get to say, you know, there is no jurisdiction under 1252 because like the government argues, the claim is not under one of those, you know, one of the permissible claims. Then our argument is, well, at least the petitioner has to have, has a right to bring a suspension claim, a habeas claim under suspension. Why? I mean, there's the doctrine of consular non-reviewability, for example. There's some questions that you can't get into court for. And it seems to me the premise of your argument is, well, you've got to be able to bring it because if you can't bring it a habeas, you bring the suspension. But the premise of that is you've got a claim you could bring. Yeah. So the government's argument there is that we can't bring that because the person's not in custody. So that's where the custody dispute goes beyond that. There are some claims that you can't get into court for. That's correct. Our argument there is that the Supreme Court is very clear, a clear line of cases. And if we look at them carefully, the one cited at Kew, going back more than 100 years ago, the Gedgiel case. And then though that line reaffirmed in St. Cyr, any of those cases have to do with somebody who is not in the country. Yes. In other words, what do we do with our case, Garcia de Rincon, which is, well, you know, you're not lawfully admitted. So you don't raise the St. Cyr question. So there's a, in de Rincon, the individual was raising a constitutional due process argument. Not a dispute about, in de Rincon, right, the person shows up at the border and claims to be a U.S. citizen. So clearly inadmissible under the expedited removal proceeding. The argument there is, well, you know what, de Rincon should have been given more, a fuller hearing. There's some, there's a due process argument there. And what de Rincon says is that, you know, arriving aliens do not have constitutional, a right to constitutional due process. But that's, and this distinction that I want to make, I think comes out quite clearly in these cases. Even though, and so we'll go back and look at the Kew case. Even though, and that, in that case, the Supreme Court makes very clear that an arriving alien does not have constitutional due process. There's a famous quote, you know, as to such persons, officers acting within their powers expressly conferred by Congress are due process of law. Nevertheless, a Kew goes on and says, you know, but in addition, an arriving alien doubtless has a right to habeas corpus. What does that mean? Well, the Kew case, and actually goes through the analysis, comes out against the arriving alien, but analyzes whether the agency had the statutory authority, statutory and regulatory authority to issue that order, even though there's no constitutional due process, the non-citizen has the right to, to question whether or not the agency is acting in accordance with the authority conferred by Congress and the regulations. And in fact, at the very end, the Supreme Court concludes, it says, you know, it analyzes and then says, well, you know what, the, the action taken by the inspector in this case, quote, was within the authority conferred upon him. Very clearly taking jurisdiction and analyzing the question of whether or not they're statutory or regulatory or lawful authority to issue the order. That's also done in the case. Okay, let's, let's say that we agreed with you that, well, let's just say we determined he's not in custody in a habeas, traditional habeas sense. So he's not bringing a 2241, or he's not permitted to bring that, which is what he did bring. And let's say, in part, that was one of the claims. Let's say he can't go down that road. But then we say, well, we, by your theory that there is jurisdiction, then we would have to look at whether the customs had authority to remove under the statute, correct? That, yes, that's our argument. Okay, and is that your argument, or is that the argument to be made by Mr. Geller? I would like to have Mr. Geller, yes, have. Mr. Geller is going to make that argument. Make that, that argument. So you're really arguing the jurisdiction. Well, yes, and Mr. Geller is arguing the relevance of the suspension clause and how that impacts the jurisdictional analysis. Well, if we got through all of that, who's arguing that, in fact, there was no authority? Whose, whose argument is that? Oh, the merits of whether or not there's, the agency actually had authority? That, that is, that's not my argument. Okay, and, well, and maybe you didn't answer my original question, which was, if he's coming here, even though he's a Canadian, and Canadians can, as we know, pass through the border, they don't need pieces of paper, but if he's coming here to work, he does need a piece of paper, right? That's, that's right. Okay, but this gentleman, if he's coming here to work, why don't they have the authority to issue the order? And just explain that to me. Yes, so what the, yes, and I, I, I do, I sort of apologize for taking up Mr. Geller's time. Well, you pretty well got in the hole, but I'm going to remedy that. So what the, you know, there's clearly a, a waiver for people who, for whom documentary requirements are waived. What that waiver requirement is, is a, it, it says that people, Canadians, can come up to the border without documents and asked to be admitted as non-immigrants. Now, if, so if the officer, what our argument is, that, that exception there does not, it clearly makes it clear that the officer, the CBP officer, is not to issue an expedited removal order against the person who comes up under this documentary waiver provision. That's a waiver that, in other words, that allows the person to come up to the border and ask for entry without having the documents. If the person doesn't have the documents, what happens is, well, the, the, and the, the immigration officer questions admissibility. What happens is, is the case gets sent over to the immigration judge for a determination, but not, not the waiver. The, the only way that this exception makes sense without reading it out of the regulations is by saying that a Canadian can come up to the border without documents and present himself or herself for admission without fear of having to, having an expedited removal order issued against the person. According to the, according to the government, if the officer determines that the person really needs a, a, a non, a visa, well, then we can turn around and remove the person expeditiously. But that, well, if, if the person says, I'm coming here, if the, if they basically meant I'm coming here to work, you're saying, oh, okay, well, never mind that he's coming here to work, he still shouldn't be removed. He should go to the immigration court. He shouldn't be expeditiously removed. Right. Okay, fine. I got your argument in mind. Thank you. Okay. Thank you very much. Now, you see, the hazard of splitting argument, which we never recommend because we always get in this situation, and the person sitting there, I can always tell, is really getting anxious for good reason. But. Good morning, Your Honors. If we just restore this, and he wanted six minutes, so I'm going to give you your six minutes, starting at the top. Thank you, Your Honors. May it please the Court, legal learn from the ACLU on behalf of Mr. Smith. Let me just say one thing about the merits, and then I will go to jurisdiction. The district court. He has six minutes. The district court did not decide the merits. And I don't know that it was completely, fully briefed here. So I think if there's any question, because it does require, like a lot of immigration cases, working through the regulations. And I think, you know, if the Court finds jurisdiction, I think remand might be one way to go, so that there could be full briefing in a district court decision. Because it is sort of a pure question of law about Canadians who arrive at the border and declare themselves non-immigrants. And there is a difference between coming to work as a non-immigrant and coming to work permanently as an immigrant. And the regulations go to non-immigrants. And so I think it's a fairly tricky question that might benefit from fuller briefing in a district court decision below. If I might return to the custody questions very quickly. I just wanted to clarify one thing. Mr. Smith's habeas petition very clearly states that he is pursuing jurisdiction in Paragraph 2 under both 2241 and 242E. And I think it's fairly uncontroversial as the government conceded below, and as the Meng Lee decision that's now been vacated. But as Meng Lee said, even though 242E is styled by Congress as a habeas petition, Congress did not decide to impose a custody requirement for that provision. And that is parallel to the prior habeas petition that was in the INA, that was a separate grant of jurisdiction, 1105A10, that was repealed in 1996, that was discussed by the Supreme Court in St. Cyr. Like the current habeas provision, 242E2, that also did not in the text have a custody requirement. It was understood, unlike 2241, not to have a custody requirement. And I think, you know, and I think you've both zeroed in on the fact that it seems like the parties are talking past each other on whether the government's conceding there is no custody requirement for 242E. I want to be diplomatic about this, but I think if you look at the custody brief, the custody section of the Ninth Circuit's government brief, the heading says categorically the district court did not have jurisdiction, or this court does not have jurisdiction because there's no custody. If you look at the text, it's all about 2241 without any mention of E. And if you go back to the district court briefs by the government, it's document below, document 26, footnote 7, and document 13, footnote 2, the government very clearly says it's a nonissue because he can proceed under 242E. The one other thing I would say, which is somewhat beside the point, is if you were actually going to reach 2241. It's beside the point. Okay, I just wanted to say that we're on a motion to dismiss, and there's very clearly allegations in the habeas petition 2 and 9 that there was custody, and on a motion to dismiss those to be accepted, but in any event, because it's a 242E, it doesn't really matter. And I don't understand the government. That would be a fairly high-level decision by the Department of Justice to back off that 242E doesn't have a custody requirement. In terms of now getting to what, Judge McEwen, you asked about, is there a way to have jurisdiction under 242E without striking the statute down? I think absolutely. This case is really far-reaching, really momentous issues, but on the other hand, it's extremely narrow. I am not aware of any case in the history of this country where liberty is at stake, where Congress had completely insulated whether the agency could extend its own jurisdiction, and there's a pure question of law at stake, and that could not be reviewed. And it's going to both of your questions about, well, maybe there doesn't always have to be jurisdiction, Judge Clifton's question. The consular non-reviewability is people outside the country, and that's a purely discretionary determination, and that's why there's no jurisdiction. Here what we have are people arriving at the border, and the one thing that, if anything, St. Cyr teaches, and now Boumediene, is that the history matters, and the government hasn't grappled with that. There has never been a time when someone could arrive at the border and not get habeas review of a pure question of law. And those cases were cited interchangeably in St. Cyr. Gigo at St. Cyr at 306, Nishimura at EQ. Those were cases where people had not been admitted. Exactly. They were seeking arrival, and the court could not have been clearer that facts can't be reviewed, but pure questions of law. And those cases were cited in St. Cyr. The Ninth Circuit has multiple cases. I don't know that they're in the brief, and I can give you the sites to those where someone's arriving at the border and they exercise habeas. And the critical thing that St. Cyr emphasizes, those were all during a period when Congress had reduced habeas to the absolute constitutional minimum. So the only way you could seek habeas is if it was constitutionally required. And though there is not a single case in the history of this country where arriving aliens could not get habeas to have a question of law. And what I think Derek Cohn did, and I'm giving them the benefit of the doubt, because the opinion on the Suspension Clause was only a paragraph, and there was no briefing, and certainly there was no discussion of Boumediene, is what the court did is link the Suspension Clause to a particular claim there, which was a procedural due process claim. And that's undisputed, that an arriving alien has no procedural due process claims. But it doesn't mean that they can't question, raise a question of statutory law on habeas. And I think the cases to look at for those are a few, Knopf v. Shaughnessy and Mazzei. Those were both cases that said this arriving alien does not have procedural due process rights, but went on to exercise habeas to see whether the statutory authority of the agency had been transgressed. And interestingly, Boumediene found habeas for enemy aliens at Guantanamo without finding a procedural due process right. So I think Derek Cohn is one of those cases where the Suspension Clause was very clearly, in one paragraph, linked to procedural due process, didn't grapple with the history. I think this is too big a situation for an unprecedented holding. There's no jurisdiction over agency jurisdiction, no judicial review over agency jurisdiction to extend any of your cases beyond the facts. And none of the cases that the government has cited, the Cohn decision from the Seventh Circuit, Broome from the Fifth Circuit, the Turgerell decision from the Tenth Circuit, which actually is not precedent, none of those cases involve a statutory question about whether the agency had gone beyond its own jurisdiction. And none of those cases grappled with history or had full discussion of the Suspension Clause. And I think this is a situation where there is too much out there on the Suspension Clause. But I do think you don't ultimately have to strike the statute down, because I think very clearly it falls under 242E2, which is the unconstitutional. Before you move on to that, and that's the question of whether Derry Cohn, even though it may not have analyzed some of our historical Shaughnessy in other cases, or even the more recent like Boumediene, whether this panel is bound by that, given the language of this jurisdictional limitation not violating the Suspension Clause. Right. I mean, I think, you know, that's the right question. I read Derry Cohn as, you know, there is obviously some broad language in Derry Cohn, but I don't think it's beyond this panel's capacity to say we are going to understand Derry Cohn to be about the particular claim. I mean, that paragraph is very clearly talking Suspension Clause in due process and linking it. And so I don't think, you know, to the extent that there is language that goes beyond that, I think it would very clearly have to be understood as dicta. And I think it's particularly, you know, important to limit it to the facts of the case, given that there was no briefing, given that Derry Cohn admitted there was no briefing, no historical analysis. I do think that paragraph on the Suspension Clause, even though there is some broad language, is very clearly tying its discussion to due process. And the other thing, and this may go more that Derry Cohn didn't answer the question, is Derry Cohn said St. Cyr was about admitted aliens. Well, that may be true, but that just starts the discussion of, okay, well, what about non-admitted aliens? And the one thing you see in St. Cyr at 306 is the constant use interchangeably of cases, habeas, historical cases, for people admitted and people seeking to enter the country, like G. Joe and Nishimura Iku. And so I do think that given the way the paragraph is written, it is okay for this panel, I think it's appropriate for this panel to limit it to the facts. If I could just say a quick word about the statute and how to interpret it. I think the government's position is that under means, literally, whether as an historical fact turning to E5, that E5 is the provision that defines the term under, what it means to have an order under. So 242E2B says you can review whether there's been an order under the expedited removal statute, and then 245E5 turns you to give an explanation, and there's two sentences there. Judge Hawkins very clearly thought the first sentence was ambiguous about whether an order in fact, such an order had in fact been removed. I think that's right. But I think also the critical thing which no court has analyzed is the interaction between the two sentences. The second sentence goes on, and the government focuses on this, to say there will be no review of inadmissibility or relief. So there's two critical points here. First, Mr. Smith is not actually, that's not the relief Mr. Smith is asking for. He may ultimately be inadmissible, but it has to be an immigration judge who defines it. So that's sort of why he doesn't come on the second sentence. The second critical point is the interaction between the two sentences. If the government were right, that literally all you can do is look as an historical fact, was there a piece of paper marked expedited removal 235 and your name was on it, then the second sentence would be entirely superfluous. Because obviously if all you can do is look at the paper to see whether your name's on it and whether it's stamped 235, there'd be no need to express that you can't get review of the admissibility or relief determinations. And I think what our position is that you can always get review of whether the agency extended its own statutory jurisdiction. And I think that comports with the purpose. And that second sentence really I think was summing up what Congress was trying to do. The government has made a point of saying there's 4.5 million people seeking entry in the country each year. I don't know whether that's actually correct. But of course 99.99% of those people are seeking a merits ruling on admissibility or relief. Those Congress very clearly said are not reviewable. Judge Hawkins suggested maybe superficially for legal requirements, but that's a much harder case that Judge Hawkins was dealing with in Lee about whether you can actually get some legal review of the admissibility determination. We're simply saying that's what Congress was dealing with, not these threshold questions which are very rare and very limited about whether the agency has extended its own statutory jurisdiction. I mean that would mean that flying Cubans, Canadians, people already in removal proceedings who clearly can't be put in expedited removal. And just I know that Judge Clifton had a question about where in the statute, the flying Cubans are in the statute and our claim is not in the statute. Well, I don't think that matters from a jurisdictional standpoint. The Supreme Court has very clearly said both statutes and regulations come within the core of habeas. And they pointed out the Icardi case. Some of this Court's Ninth Circuit cases were regulatory cases back historically in habeas. So I think the difference is and it relates to your description of the agency being able to define its own jurisdiction. A regulation is exactly that. The statute is where Congress says what goes and the regulation is where the agency says what goes. Well, if you rely upon an agency, aren't you doing exactly what you're saying that agencies shouldn't have the power to do, that is define its jurisdiction? Well, Your Honor, I mean let me be very clear on that. Ultimately, if the government wants to go back and change the regulation, that could defeat our merits claim. But now that is the law of the country. And for jurisdictional purposes, you always have the ability to raise a pure question of law about the proper interpretation of the statute or regulation. And the Supreme Court was very clear about that in St. Cyr. And again, there are Ninth Circuit cases that I can give you the cites maybe on rebuttal that talk about that rebuttal. And we've let you go. I'm going to have to ask you to make one closing remark. If you have specific cases, our clerk of the court does have pieces of paper. You can write them on there. They are 273. Don't give them to me here. I said the clerk has a piece of paper. I'm sorry. I'm sorry, Your Honor. I would just say that the final points are none of the cases that the government has cited involve this type of threshold question about the agency extending its jurisdiction or expiry removal. Congress was very clear that this was a rudimentary procedure, very draconian, and therefore they were going to cabin when it could be used. They were painstaking in cabining it. There is no jurisdiction. How did Congress painstakingly cabin? Because the only thing they put in the statute is the flying humans. Well, also that very clearly said A6 and A7 are the only admissibility grounds over which expedited removal applies. There are dozens and dozens and dozens of admissibility grounds in the Immigration Act. And so Congress was very clear about that. It may be that Mr. Smith is inadmissible under an A5 provision of 212, the INA section 212, but not this one. And this would be a really momentous ruling if you were to say there was no review whatsoever of a pure question of law where liberty is at stake. Thank you. We have your argument in mind. Thank you, Your Honors. We'll hear from the government. Thank you. May it please the Court. Your Honor, on behalf of the respondents, I think it makes sense to begin by focusing on what this case is about and what it isn't about. This case is not about a systemic challenge to the expedited removal regime. It's not about whether all Canadians as a category are not entitled to some greater review as to their admissibility to the United States. It's about whether an individual, Mr. Smith. I'm sure we have the ships passing in the night because we were just told that's what it's about. Why isn't it about that? Well, for starters, 8 U.S.C. 1252E3 specifically states systemic challenges to the broader expedited removal regime. It must be brought to the District Court for the District of Columbia. Well, that's a challenge to expedited removal as such. But if there's a question as to whether expedited removal applies by its terms to a given category, I'm not sure why that should be perceived as a systematic challenge. They're saying, look, it doesn't reach this far. Not that the system itself is invalid. Well, I think it's we have to distinguish, we have to distinguish between Canadians as a category and Canadians, individual Canadians such as Mr. Smith who have been determined, I know this gets to the merits here, to be seeking admission to the United States to work and lacking proper documentation. That, if we want to talk about categories, that category of individual requires documentation that follows plainly from the statute. I guess that's where we're passing in the night. You know, forget that there could be a systemic challenge. Whatever issue, whatever determination we make here will be a statutory interpretation. Of course, then it would be binding, so one could call it either systemic or we could say, well, it actually just applies to Mr. Smith's case, but the statute will then be interpreted. So what I understand them to be saying is, look, he has raised two things, I think, and maybe you can respond to these. One, he has raised a question of law as to the authority to issue expedited removal in this situation and this court should have jurisdiction to hear his complaint. And once it has jurisdiction to hear the complaint, then they have other arguments. Right. Well, let me. So maybe you can also tell us if there's additional issues you think we should be reaching. Well, to answer your initial question, let me answer your second question first. So I think there's the custody issue, which I'm happy to address, as easing in custody for habeas purposes. There's the issue of whether 1252E2 permits the review they're seeking specifically as a legal matter. And then there's the issue of the merits. So let me start with your first question, Jen. So 1252E2, and both counsels have repeatedly stated that what they are seeking is not review of admissibility, which the statute forecloses clearly, but whether the statute should apply in the first instance. And they point to 1252E5 as being somehow ambiguous on this point. But I think what they're leaving out is 1252A1, which says very specifically, no court shall have jurisdiction to review a decision by the attorney general to invoke the provisions of such section or apply such section to individual aliens other than as outlined in 1252E2. They also state that no court has ever. Slow down. You're going too fast for me. I can't keep up with you. So where are you reading from? I'm reading from AUSC 1252A2, matters not subject to judicial review. Okay. Review relating to section 235B1, not withstand other than as stated. Slow down. You know, you might like sleep with these statutes, but we don't every day. My apologies. So that's 1252A and 1252E are the two relevant statutes that govern the situation before you. 1252A says other than the review permitted in 1252E, you cannot review any of these things. And that includes whether the statute was properly invoked in the first instance and a decision by the attorney general to invoke the statute and whether the application of the statute to specific individuals was unlawful. This is the very claim they're seeking for you to review. And each and every court. Again, their theory is that they come under E. A says there's no review except for E. So doesn't that make the question whether they come within E? E. Right. Well, I'm happy to take a look at 1252E. That's what they're saying. That's all A says. A says except is provided in E. So A doesn't say there's not jurisdiction provided by E, does it? Well, E basically says go see E. You're giving me an argument about A2. And as I understood it, A2 says go see E. Does A2 say something in addition to that? There's some categorical bars within 1252A. For this case, they're saying there's jurisdiction under E. Well, you can't read E, Your Honor, without looking at A. A, we start at A, and A says the very relief they're looking for, which is the statute was unlawfully applied to this particular individual. The statute specifically says you can't get to that. But I look at A and all these things under 2, matters not subject to judicial review, except is provided in subsection E. Except is provided in subsection E. So doesn't that mean that A2, I'm not trying to resist you on this, I don't understand that A2 limits jurisdiction if it's covered in E, and I understood their argument to say it's covered in E. So I'm not sure what else A2 is supposed to be telling us. 1252E2 is very specific in what is permissible. There's three basic grounds for review. Is this individual an alien? Was he ordered removed under the statute? And is he someone who can prove by preponderance of the evidence that he's otherwise entitled to be here because he's a lawful permanent resident, a refugee, an asylee? None of those bases, all those bases are conceded here to not be applicable. So E is a much more narrow basis for jurisdiction. Yes, A speaks of except as in E, but A also speaks of other than in E, there is no review of whether the statute was lawfully applied in the first instance. And both my opponents here have stated that no court has ever issued the ruling that the government is seeking here. I would submit that quite the contrary is true. This court has done that twice in Levy, Eddy and DeRincon, both saying we cannot, we lack jurisdiction to determine whether the statute was properly invoked in the first instance. So have the Fifth Circuit, Seventh Circuit, and Tenth Circuit in their decisions addressing the same issue and relying on Levy, Eddy, this court's decision. So the very relief they're seeking was the statute lawfully applied is barred by the statute. But then also as a practical matter, how do you review what they're asking you to review? If but determining that in fact the statute did not lawfully apply to Canadians, you have to determine this person was in fact admissible. And so that's the review that this is what we get to the issue on 1252E5 where they say there's an issue of ambiguity. No, 1252E5 says very plainly the inquiry on whether the statute, the expedited removal relates to this individual is limited to whether the order was in fact issued and whether it names this petitioner. I think that's where it seems the parties are talking past each other because this is the merits of this individual. And they're saying, well, we're really actually looking at the authority of the agency, which they frame it a little differently and maybe collapse on the same thing. But they're saying we're looking at the authority of the agency and one ought to be able to challenge that as a statutory matter. And you're saying, well, one, there is no jurisdiction because you're seeing whether the statute was unlawfully applied to this gentleman. And in any event, if you get to the statute, then it's applied to this guy appropriately and there's not an authority question. Is that fair enough? I think there's a chicken and egg problem the way the parties might be framing the issue and they're more on the chicken side of this and I'm more on the egg side of this. And I don't mean to be glib. I'll explain in a moment. So in order to determine whether the agency actually had the authority to reach the specific individual, you have to also determine whether the specific individual was, in fact, admissible. So I think the other side conceded that CBP at the border has the authority to determine if an individual comes to the border and says, I'm a non-intending immigrant seeking to visit, they have the authority to say, well, I don't believe you and this is why here and this is the merits again, but here's why I don't believe you. And that's been spelled out in the record below. So if the statute does not lawfully apply to this individual, then you have to determine that CBP made an erroneous determination that this person is, in fact, a non-intending immigrant as opposed to an intending immigrant seeking to work. And that's precisely what the statute forecloses. The inquiry is inextricably intertwined. You can't look at one without the other. And this is separate from the statute specifically saying you can't reach the question of whether the statute was lawfully applied in the first instance. So I think they're saying that it's not for the court to decide, but it should go, it's not for the border agents to decide, but it should go to the immigration court to determine whether he did or did not have the appropriate papers or whether he was going to work or not work and whether he fell in this category. And what's your response to that? That's contrary to the plain language of Section 8 U.S.C. 1225B, which lists two discrete and specific instances where the expedited removal statute shall be invoked. And that's 1182A6, where there's an issue of fraud or misrepresentation that is found in admission. And then 1182A7, where the individual is determined not to have the appropriate documentation they need to enter the United States. So those two issues are not referred to an immigration judge. Both counsel are correct. There are a plentitude of other instances where individuals must be referred to the immigration judge. But Mr. Smith was not ordered removed under any of those provisions. He was ordered removed under 8 U.S.C. 1182A7, when the CBP determined that he did not, in fact, have the appropriate documentation to enter the United States to work. If I could go back to the custody issue for a moment, there seems to be a disagreement on whether the government has or has not waived this issue. I'd say as a threshold matter, the government can't waive this issue. It's a jurisdictional issue. We can't waive ourselves in jurisdiction before the court. I'd also, we've laid out in our own brief why we disagree with their representation when we waive the issue. In Ming, the issue was not necessarily waived. The parties just simply agreed they didn't have to reach the issue, and the court reached 1252E2. But on this issue, and this is a case that none of the parties briefed because it's a case from this circuit as of June 2013, I'd refer the court to Veltman-Berrigan, 717F31087. That's a decision by Judge Ikuda that's in June of this year. That case also involved an expedited removal order. That involved an individual who had misrepresented who they are and was removed expeditiously, returned to the United States, and lived freely within the United States for several years after the removal order was executed. They sought to challenge the underlying removal order out of fear that it would be used against them in the future to reinstate that order and remove them. The court very plainly said once the order is executed, they are no longer subject to an order of deportation, they are no longer in custody, which is distinct from whether an individual is that they are in fact suffering consequences of that order, and the court would have jurisdiction to reach that issue. Did you bring, is that a 28-J letter to us? No, I only learned of this case this past Friday. But you know what you could do if you learned on it the past Friday? You could file a quick pleading with the court, or you could even do it this morning rather than doing it at oral argument. So now what I'm going to ask you to do at the conclusion of the argument is the same thing that I asked Mr. Gallant to do, and that is to fill out the form that our clerk does have. I'm happy to do that, and my apologies for not bringing that to your attention sooner. So there's also, on the custody point, there's a factual issue that was raised in the motion to strike. And Mr. Smith raised this on appeal for the first time. He's not basing his claim that he's subject to custody, that he's subject to an expedited removal order. He's basing it on his claim that he approached the border on December 20, 2010, two months after the order was issued and executed, and arguing that because he was asking questions about his status and had to wait in line in a public room and spoke to an officer for 20 minutes or so, that he's in custody. That places him in no different footing than anyone else has to come to the United States and go through primary or secondary inspection, let alone just speaking to an officer about his immigration status. I think what I understood their argument to be is that it's really you don't need the custody under 2241, that in and of itself, by raising the 1252 claim, that you can invoke habeas procedures that don't require custody. So they were splitting the two arguments, as I understood. And they were saying, I think, that as to the second one, not the 2241, but as to the second, that you could raise this question without being in custody. On that point, you and they agree. Is that true? No. I think if you find that there's no custody, that that's it. If you find that there is custody for some other reason, he's suffering some constructive consequences or something that the rest of individuals at the border are not suffering from, then you get to 1252E2. And, again, that's that case I just referred to that I'll bring to your attention more formally after the argument. Well, that's what I think they're saying, that you can, they could file, they've really filed under two different claims, two different statutes. I would disagree, but that speaks specifically of habeas. Well, it does, but does it speak, is there an in-custody requirement in that statute? That's what the panel of the circuit seemed to suggest. Well, in the Beltman-Berrigan case, they're dealing specifically with an application under 2441. And I understand the argument here to be that there is separate authority for habeas jurisdiction under, I'm getting confused in the numbers, I guess it's 1252E, to which the custody requirement does not apply. Well, Beltman-Berrigan doesn't seem to speak to that. Is it, and this is why I say that the ship seemed to be passing in the night, because the government's argument appears to be premised, at least in this court, appears to be premised on the notion without custody, you simply don't have habeas custody and all the ramifications. And the argument being made by Mr. Smith, allegedly pointing to things said by the government, the district court, is that, well, yes, but there is this additional habeas jurisdiction in the arriving alien context pointing to 1252E. Now, is it your contention that the custody requirement still applies to the arriving alien under 1252E? Before I answer, I see I'm close to the end of my time here. We're giving you a little leeway. We're making you all work extra today. I appreciate that. You don't pay extra for it, though. No overtime. I understand the argument. I understand their position that in Lee, the issue wasn't raised or was conceded by the parties. The case that I'll refer you to says otherwise, I think. And the problem, the way that the argument collapses is the earlier case was a 2241 case. Our case, the Velgen-Verrigan case, which was June, that's a 2241 case. The issue of 1252E was raised in that case and was briefed. Okay. The government in that case argued that the one, 1252E2, was dependent on a 2241 habeas. I don't know that the court specifically stated as such, but it cited the court's earlier cases in Miranda saying once an expedited removal order, a normal removal order is executed, there's no longer custody. So this language in 1252E that says judicial review of any determination made under Section 22B1, et cetera, is available in habeas proceedings, then you say that the government's position on that point is that habeas proceedings under 28 U.S.C. and therefore require custody? Is that your position? That's where federal habeas is defined. So, yes, that's the government's position, although if the court disagrees there's the second basis that we've discussed previously, that 8 U.S.C. 1252A plus E forecloses the very review they're seeking. So the government's position is, I suppose, to simplify that there are two jurisdictional bases to affirm the district court, the basis the district court used or the separate custody requirement. And I think it's instructive on a custody requirement to look at what happens if they raise the suspension clause argument in a habeas proceeding that's not exactly a classic habeas proceeding, but simply it seems to be an administrative proceeding that doesn't require custody. What suspension clause issue is there in that situation? There's no detention. There's no writ to issue freeing someone from that custody. So if there is no custody requirement, it seems that there can't be a suspension clause issue. Well, the Supreme Court has made references. I'll be apparently in the nature of dicta, but it has made references in some of its old cases to habeas as being a form of relief available. And sometimes you improvise. Maybe that's when the court was improvising, but why is it we should decide that habeas in all its forms requires custody or the variance thereof? Well, if you look at each, and I'm correct in saying this, essentially all the cases my opponents cite, the Supreme Court cases going back to 1892, the acute case I believe they refer to, and the Justice Holmes decision, in all these cases individuals either physically detained or subject to an order of excludability. An order of excludability is similar to an order of removal. It hasn't yet been executed because they're still in government custody. So they're under the agency. The attacks were more than just the custody. The attacks did get to the question of being able to enter the country, not whether they should be let go to go back to wherever they were from. I'm not sure that's right, and I may be misreading it. There are too many cases. I don't pretend to have a handle on it. But the impression that I had, or at least the impression, the direction I was pushed by Mr. Smith's argument was that the court has made reference, the Supreme Court has made reference to habeas, and their argument is that 1252 is intended as an adjunct or an addendum or an add-on of some kind to the customary requirement for habeas. For the sake of argument, let's assume that's correct. And let's assume then that 1252E2 does require custody, but it does permit the review that everyone here concedes Mr. Smith cannot get because he's neither an alien nor an LPR. I mean, he concedes he's an alien. He's not an LPR, otherwise entitled to be here, and he was ordered removed. So this brings us to the suspension clause issue in that situation. So this wasn't an issue that was briefed below. This was an issue I think that was raised by the first time by Mr. Geller, but I'm happy to address it, the argument that Boumediene somehow changes the landscape and requires a reexamination of the statement in Derrick Holmes that arriving aliens have no suspension clause rights as to their admission to the United States. And I don't think that it does. The issue in habeas that was being vindicated in habeas proceeding in Boumediene is indefinite physical detention. Well, custody is no doubt present there. Clearly, clearly. It's indefinite detention where individuals have been restrained in physical custody for up to six years and each of them denying the fact that they are an enemy combatant. And that's distinguishable here from an individual who does not deny that he is an alien, does not deny that he's not legally non- he's not admissible to the United States under Let me take, let me strike that. I mean, he's not one of the categories that would require further review because they're entitled to be in the United States, a LPR, legal permanent resident, refugee, or asylee. He's standing at the border looking in. He's in a much different position than someone who's been restrained by force by the U.S. government in physical detention at Guantanamo. He's an arriving alien. So the only thing that would be tested in habeas is what rights he has at the border concerning his admission. And those, as in the cases they've referred to, Knopf, Meze, and Progeny, are precisely what Congress has said they are. And that's what we're arguing about here. Congress has said what their rights are. You get this limited review to ensure that they're not otherwise entitled to enter the United States. And that's it. So there's no due process right, either procedural. I don't think they're claiming a due process right, as I understood. I think they're claiming that, you know, certainly 2241, 2255 are statutory constructs, but that the Constitution can't override those, obviously. And if you have a constitutional right, that we've never had a case that didn't give some right to challenge your admissibility, even if you're outside the border. And if you pass such a statute, you then run into a constitutional problem. I think that's their argument. That's their argument. The government respectfully disagrees with that position. I mean, 1252E lays out the rights they have for review, and 1225 articulates what rights, if any, they have to vindicate in habeas as to their admission. So I would also look at their complaint for a moment. They are, in fact, raising what are essentially due process claims. They're saying they didn't follow their own regulations. They should not have determined that this individual was an intending immigrant seeking to work. Paragraph 26 and 28 of their complaint, in issuing an expedited order of removal against Mr. Smith, CBP violated the due process clause of the Constitution, and they seek review of that through the habeas mechanism. And then also the relief they seek. They would like an order declaring that the order of removal issued against Mr. Smith is unlawful, and an order enjoining the defendants from finding that Mr. Smith is inadmissible. These are things that the statute plainly speaks to. And so we can argue about labels and how we frame what rights they're seeking to vindicate, but ultimately what they're seeking is a reversal of the expedited removal order. An argument that CBP did not, in fact, have authority to find this person was an intending immigrant essentially requires you to find that CBP erred, and that's what the statute forecloses. And beyond that, as an arriving alien at the border with no ties to this country, who states clearly that he has no interest in immigrating to this country, that that's all the process he's due and he's received that. Are there no other questions? Thank you. Thank you. We've given both sides considerable extra time. I'll give you one minute for a rebuttal, and you'll need to stick to that. I'll be very quick. The case that he just mentioned, that case was about 2241, as Your Honors pointed out, and as I said, even if you had to reach 2241, this is a motion to dismiss, so the allegation of custody would stand. I just want to address one quick thing that Judge Clifton was talking about, which is the A2A provisions that send you to E. So it's exactly right that they send you to E. One of the provisions, little three, does not send you to E. But what I want to ñ those four provisions are very ambiguous. They seem to sort of overlap, and the government's never really given a coherent theory. What we understand, I think, is the only really proper reading of little two and little three is it's about the decision to apply expedited removal, which is controversial, to people in the interior of the country, which is 1225B1A3. And that's why little two in 1252A2A, little two says the decision of the Attorney General. It's the only place where the Attorney General has the decision, and that's a decision to decide to apply expedited removal of the interior. Little three follows up by saying the discretionary decision to individual aliens, those people in the interior cannot have any review of that discretionary determination, including asylum seekers, to apply it to them in the interior. So that's what two and three are about. Thank you. Thank you. I'd like to thank both ñ all counsel for your argument this morning. It's a complicated case. We appreciate the briefing and argument. If you have additional cases, simply so we have a record of those, you can provide the supplemental citations to Ms. Bremner here. The case just argued of Smith v. United States Customs and Border Protection is submitted.
judges: Hawkins, McKeown, Clifton